**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CHARLES HICKS**<br>**c/o Attorney Eddie Sipplen**<br>**1655 W. Market Street,**<br>**Ste 505**<br>**Akron, OH 44313**<br><br>**PLAINTIFF,**<br><br>**vs.**<br><br>**CITY OF AKRON ,OHIO**<br>**202 Ocasek Government Building**<br>**161 South High Street**<br>**Akron, OH 44308**<br><br>**And**<br><br>**MIKE CAPREZ (In his Official and**<br>**Individual Capacities)**<br>**c/o Akron Police Department**<br>**217 S. High Street**<br>**Akron, OH 44308**<br>**And**<br><br>**JOHN TURNURE (In his Official and**<br>**Individual Capacities)**<br>**1623 Manchester Ave, SW**<br>**North Lawrence, OH 44666**<br><br>**And**<br><br>**SAMNANG NAN (In his Official and**<br>**Individual Capacities)**<br>**c/o Akron Police Department**<br>**217 S. High Street**<br>**Akron, OH 44308**<br><br>**And** | **CASE NO:**<br><br>**JUDGE:**<br><br><br><br><u>**COMPLAINT**</u><br>**(Jury Demand Endorsed Hereon)** |

1

**GARY WHITE (In his Official and**               )
**Individual Capacities)**                         )
**c/o Akron Police Department**                    )
**217 S. High Street**                             )
**Akron, OH 44308**                                )
                                                   )
**And**                                            )
                                                   )
**PAUL BARNES (In his Official and**               )
**Individual Capacities)**                         )
**c/o Akron Police Department**                    )
**217 S. High Street**                             )
**Akron, OH 44308**                                )
                                                   )
**And**                                            )

**HEATH SMITH (In his Official and**
**Individual Capacities)**
**c/o Akron Police Department**
**217 S. High Street**
**Akron, OH 44308**

**And**

**SCOTT LIETKE (In his Official and**
**Individual Capacities)**
**c/o Akron Police Department**
**217 S. High Street**
**Akron, OH 44308**

## DEFENDANTS

Plaintiff, for his complaint against the Defendants allege in his complaint as follows:

## INTRODUCTION

1.      This is a civil rights action. On the night of February 7, 2021, Charles Hicks was at his home located 1192 Vernon Odom Blvd, Akron, OH 44307. Officers responded to the address for a domestic call. Upon arrival and after engaging in conversation with Hicks, officers forcefully threw him to the ground in an attempt to handcuff him. While on the ground on his back and while under the control of Turnure and at least six other officers, Defendant Turner purposely, wantonly, recklessly, intentionally and without regard for the consequences, at least 3 times, forced snow into the mouth and airway of Hicks and covered his mouth and nose, thus restricting Hicks's ability to breath. In spite of being on top of Hicks and within earshot of hearing the gasping and gurgling noises of Hicks and his yelling "I can't breathe!," the other defendants did nothing to stop Turnure from restricting the breathing of Hicks, and conspired in the furtherance of covering up Turnure's unjustified use of force.

2.      In an attempt to justify their illegal conduct and the illegal actions of the other officers,  defendant officers Samnang Nan, Paul Barnes, and Heath Smith  conspired to falsify police reports and gave a false version of events to their supervisors, the public and the courts, causing  Charles Hicks to be arrested and prosecuted for Resisting Arrest, a misdemeanor of the 1st degree and Domestic Violence, a misdemeanor of the fourth degree.

3.      On or about July 22, 2022, after refusing a plea offer that included him signing an agreement not to the City of Akron and its police officers, Hicks ultimately entered a

3

No Contest Plea to Resisting Arrest  in Akron Municipal Court Case 21CRB01089. The Domestic Violence charge was dismissed.

## JURISDICTION AND VENUE

4.     The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983, et seq; the Judicial Code, §§§1331 and 1343(a); and the Constitution of the United States and the State of Ohio.

5.     Supplemental jurisdiction over the related state law claims is invoked pursuant to  28 U.S.C. §1367.

6.     Venue is proper in as the events giving rise to Plaintiff's claims occurred in this judicial district.

## **PARTIES**

7.     Plaintiff, Charles Hicks, at all times relevant in this complaint was a resident of the state of Ohio residing in Akron, County of Summit, State of Ohio..

8.      Defendant Caprez is an Ohio resident and at all times relevant was employed as ACTING Chief of Police, City of Akron, Ohio Police Department and is being sued in his official and individual capacity.

9.     Defendant John Turnure is an Ohio resident and at all times relevant was employed as  a police officer with City of Akron, Ohio Police Department.

10.    Defendant Samnang Nan is an Ohio resident and at all times relevant was employed as a police officer  with City of Akron, Ohio Police Department.

11.    Defendant Gary White  is an Ohio resident and at all times relevant was employed as a police officer with City of Akron, Ohio Police Department.

12.    Defendant Paul Barnes is an Ohio resident and at all times relevant was employed as a police officer with City of Akron, Ohio Police Department.

13.     Defendant Heath Smith is an Ohio resident and at all times relevant was employed as a police officer with City of Akron, Ohio Police Department.

14.      Defendant Scott Lietke is an Ohio resident and at all times relevant was employed as a police officer with City of Akron, Ohio Police Department.

## **FACTS**

15.     On the night of February 7, 2021 Akron Police Officer Hensley and Hall responded to Charles Hicks home regarding a domestic disturbance call. Upon their arrival Defendant Officers  Hensely and Hall knocked on Hicks's door and asked him to come outside and talk to them.

16.      Mr. Hicks refused and started ranting at the officers.

17.      More officers arrived and asked  Hicks to either come out of his home  and talk with them .  At this time Hicks exited his home and stood on his front porch. Officers continue to ask Hicks to step off the porch and talk to them. At no time prior to attacking and arresting  Hicks  did any officer advise Hicks that he was under arrest.  As such, their request for Hicks to come out of the house or step off the porch to talk to the officers was not a lawful command that Hicks was obligated to obey. The officers repeatedly requested Hicks to voluntarily come out and talk with them and/or come off the porch to speak with them.

18.     Hicks threaten the officers, make threatening gestures or make aggressive actions towards the officers in an attempt to resist arrest.

19.     During this interaction with Hicks and without probable cause to do so, Officers Gary White and  John Turnure made the decision to go  "hands on" and arrest

Hicks.

20.   The officers, including Turnure attacked Hicks and slammed him to the ground from his porch.

21.   Per the video footage from Officer Turnure's Body Worn Camera while Hicks is on his back and subdued by at least six other officers:

   a.  04:12 Turnure's Knee is on the right shoulder of Hicks.

   b.  04:13 Turnure takes a handful of snow and places it over the nose and mouth of Hicks

   c.  04:19 Turnure removes his hand from the mouth and nose of Hicks, gathers more snow and places it back over the mouth of Hicks.

   d.  04:22 Turnure grabs more snow and repeats the process of grabbing snow and placing his hand over the mouth and nose of Hicks for a third time.

   e.  04:40 -04:42 Turnure's knee can be seen on Hick's upper back area near his neck.

22.   Through the entirety of Turner smothering Hicks with the snow, the body worn camera audio shows that Hicks was struggling to breath and advising officers that he could not breath. In spite of this, Turnure continued his activities restricting Hicks's airway and none of the other arresting officers stopped him.

23.   Hicks was subsequently arrested and transported to the Summit County Jail without receiving any medical treatment.



24.     In the intervening period between the arrest and Hicks' No Contest plea, Defendant Officers jointly prepared and or conspired with one another to prepare false, misleading, and incomplete official reports and to give false incomplete, and misleading version of events to their superiors and to the public.

25.     Defendants' failures to activate and/or properly utilize their body-worn cameras permitted them to conspire regarding a false/incomplete version of events to justify the unlawful shooting.

26.     To justify their misconduct and the misconduct of fellow officers, officers in spite of Hicks not being aggressive towards them,  falsely claimed that due to Hicks size and conditioning, that HicksPlaintiff posed a threat sufficient to justify the use of force.

27.     For over 17 months, Hicks faced serious misdemeanor charges and faced a minimum jail sentence of at least 180 days in the Summit County Jail. Hicks was forced to engage criminal defense counsel and defend himself against the fabricated

charges.

28.     On or about  March 5, 2021, the City of Akron's Office of Police Standards and Accountability (" hereinafter referred to as " Internal Affairs") was notified of the incident and on March 8, 2021 began its investigation into the use of force utilized during Hick's arrest. Lt. Scott Lietke was placed in charge of the investigation.

29.    Internal Affairs interviewed eight officers and a supervisor to determine if the actions taken by Turnure were reasonable. With the exception of Defendant Romine, who stated Turnure's actions were reasonable or Defendant White who said he was unsure, all officers stated that they would not have done it themselves or it was not reasonable.

30.    The next item that internal affairs tried to determine whether or not Defendant Turnure " knowingly caused or attempted to cause physical harm" to Charles Hicks.

 31.    The interview of Officer White revealed Defendant Turnure told Defendant White about his actions while on scene shortly after the incident. However, White did not report this in his use of force report.

32.     The Internal Affairs interview with Defendant Smith revealed that Defendant Turnure did not report these actions in his initial Use of Force Report either.

33.     Additionally, none of the responding officers reported Turnure's actions in their Use of Force Reports.

34.     Defendant Turnure declined to be interviewed by Internal Affairs.

35.     On or about March 30, 2022 during the midst of the Internal Affairs investigation of criminal charges against him,  Defendant Turnure resigned from the police department. Internal Affairs subsequently completed its investigation and failed to

recommend criminal charges against Defendant Turnure and advised that since Turnure

had resigned, no internal  disciplinary action could or would be taken.

36.     On or about April 9, 2022, Akron City Mayor Dan Horrigan apologized for the

arrest and said that Turnure "Disrespected a Citizen." Acting Chief Michael Caprez

stated that Turnure's conduct during the arrest was "not appropriate." Both actions are

an admission that Turnure's actions were excessive and not within the scope of his job

responsibilities and/or training.

37.     On or about July 22, 2022, after refusing a plea offer that included him signing

an agreement not to the City of Akron and its police officers, Hicks ultimately entered a

No Contest Plea to Resisting Arrest  in Akron Municipal Court Case 21CRB01089. The

Domestic Violence charge was dismissed.

38.     In violating Plaintiff's rights, Defendants engaged in willful, wanton, reckless, and/or negligent
conduct. This unconstitutional conduct was the direct, actual, and proximate cause of Plaintiff's
injuries.

39.     Defendants' actions were taken jointly, in concert, and with shared intent.

40.     As a direct and proximate cause of Defendants conduct, Charles Hicks suffered and continues to
suffer lasting injuries including, inter alia, physical harm and pain, permanent disability, serious
and severe mental, emotional, and psychological injuries, economic losses, loss of liberty, and
damages.

**FIRST CLAIM FOR RELIEF**

**(42 U.S.C. § Excessive Use of Force against Defendant Turnure)**

41.     All of the foregoing paragraphs are incorporated as though fully set forth here.

42.    The acts of Defendant Turnure were performed under the color of law and deprived

Charles Hicks of his right to be free from unreasonable seizures by the use of force in

violation of the Fourth and Fourteenth Amendments to the United States Constitution and

violated his right to cruel and unusual punishment. Defendant also violated Hicks' Eighth

Amendment rights.

43.    The actions of the Defendant were committed intentionally, maliciously and/or I a gross

wanton, unreasonable, and/or reckless manner.

44.    As a direct and proximate cause of the misconduct by Defendant Turnure, Hicks suffered

permanent injuries and damages as set forth in the Complaint and in addition incurred

psychological treatment and will be forced to incur additional treatment and bills

indefinitely into the future.

45.    Defendants are jointly and severally liable for this conduct.


## SECOND CLAIM FOR RELIEF

### (42 U.S.C. §1983 Claim for Unconstitutional Seizure by Charles Hicks against Defendants Turnure, Barnes, Hall, Romine, Nan And Barnes)

46.    All paragraphs contained in this complaint are incorporated as if fully rewritten herein.

47.    The  actions of Defendants, as alleged in the preceding paragraphs, violated Charles

Hicks rights under the Fourth Amendment to the United States Constitution to be secure

in their persons against unreasonable seizure, and their right to due process under the

Fourteenth Amendment to the United States Constitution, and caused the injuries alleged

in this Complaint.

48.     Charles Hicks was subjected to the use of excessive force in violation of his Fourth
        Amendment rights.

49.     Defendants Turnure, Barnes, Hall, Romine, Nan And Barnes  further deprived Charles
        Hicks of his right to free from unreasonable seizure by causing his arrest, without
        privilege, against his consent, and without probable cause, in violation of the Fourth and
        Fourteenth Amendments to the United States Constitution or failing to intervene to
        prevent this unreasonable seizure.

50.     Defendants acted intentionally, and in a willful wanton, and/or reckless manner.

51.     The actions of the Defendant Officers as alleged in this count of the complaint were the
        direct and proximate cause of the constitutional violations set forth above and of Charles
        Hicks' injuries.

52.     Defendants are jointly and severally liable for this conduct.


## THIRD CLAIM FOR RELIEF

### (42 U.S.C. §1983  *Monell* Claim for Unconstitutional Seizure by Charles Hicks against Defendant City of Akron)

53.     All of the foregoing paragraphs are incorporated as if though fully set forth here.

54.     Defendants acted pursuant to one or more interrelated de facto polices (even if not official
        written edicts), practices and/or customs of civil rights violations and unconstitutional
        practices of the City of Akron and its Police Department.

55.     The City of Akron, at all times relevant herein, approved, authorized, and acquiesced in
        the unlawful and unconstitutional conduct of its respective employees and/or agents and
        consequently is directly liable for the acts of those agents pursuant to 42 U.S.C. § 1983.

11

56.     Despite the facts and circumstances surrounding the assault and subsequent arrest of

Charles Hicks that clearly demonstrate that the actions of the Defendants were

unreasonable and unlawful, upon information and belief, the City of Akron has failed to

effectively investigate or impose any discipline on Defendants for their illegal behavior

and false reporting (directly or by omission of pertinent information and/or facts).

57.     Akron Police  failed to conduct independent and unbiased investigations into alleged

misconduct of their officers[1].

58.      Defendant Leitke was responsible for conducting the investigation to determine whether

Turnure's actions were justified, however, instead tried to justify the officers' actions by

promoting an investigation based on the theory of Excited Delirium and Hicks's physical

attributes.

59.     Defendant Turnure  in 2017 was involved in a shooting incident involving Latrent

Redrick and Jamon Pruett. In that matter the Summit County Prosecutor's Office and

Internal Affairs determined that Turnure's actions were justified and criminal charges

against Turnure were not pursued.

60.     Redrick and Pruett sued the City of Akron and Turnure in federal court in case number

5:18CV2523.

---

[1] As noted in Akron Police Report of Investigation 21-038564, the investigating officers asked leading yes/no questions and suggested as a theory that Hicks was acting under "Excited Delirium" so as to justify the actions of Turnure and the other officers. No one, including the investigating officers are medically trained to make such a diagnosis. Additionally, even after the inquiry about Excited Delirium, there was no follow-up questioning by Internal affairs as to whether Hicks received medical treatment for excited delirium. Additionally, Internal affairs and Officers pushed the narrative that the force was justified due to Hicks' physical characteristics and not because of any actions by Hicks. Video evidence shows that Hicks never attempted to cause physical harm or attack any other officers in any manner.

61.　After losing at the District Court level and on Appeal the U.S. Sixth Circuit of Appeals based  on their Motion for Summary Judgment based on Qualified Immunity,  City of Akron subsequently settled with Redrick and Pruett for an undisclosed amount of money.

62.　Subsequent to the resolution of that lawsuit, Turnure was reassigned to a different division within the Akron Police Department.

63.　Upon information and belief, no truly independent investigation of Turnure's actions has ever been conducted in any use of force incident and he and the other officers involve have not been properly supervised or disciplined by the Akron Police Department.

64.　At all times relevant, the Defendant City of Akron and its Police Department had interrelated de facto policies, practices, and customs which included, *inter alia*:

    a.　The failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control City of Akron police officers who engage in unjustified use of excessive and unreasonable force, false arrest, and/or malicious prosecution;

    b.　The police code of silence;

    c.　The failure to properly investigate the use of excessive and unreasonable force, false arrest, and/or malicious prosecution against civilians, especially African Americans, by City of Akron Police officers;

    d.　The failure to properly discipline, monitor, counsel and otherwise control City of Akron police officers who engage in unjustified use of excessive and unreasonable force, false arrest, and/or malicious prosecution; and/or

    e.　The failure to properly train and supervise City of Akron police officers with regard to *inter alia* restricting the airways of defendants while being restrained by six to seven other officers.

65.　The aforementioned de facto polices, practices, and customs of the Akron Police Department include a pattern of acts of excessive use of force and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

66.     The Akron Police Department has engaged in little or no meaningful investigation or disciplinary action in response to this pattern of Misconduct, thereby creating a culture or climate where members of the police can and do escape their acts of misconduct with impunity.[2]

67.     This pattern is the moving force behind the conduct of the Defendant Officers in the unjustified use of excessive force against Charles Hicks – who did not present a threat to Turnure or the other officers when Turnure repeatedly stuff snow into Hicks mouth and covered his nose and mouth to restrict Hicks' breathing.  This event is not an isolated incident of unconstitutional policing within the City of Akron by its officers.

68.     The policy, practice and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including unlawful searches, seizures, and prosecutions, despite their obligations under police regulations to do so, and also includes police officers remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have engaged in misconduct.

69.     The de facto polices, practices and customs of failing to hire, train, and supervise, monitor, discipling, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize police officers from discipline.

70.     That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by

---

[2] The incident happened on February 7, 2021. Internal affairs did not begin its investigation until March 8, 2022, after the incident was publicized in the media.

the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department.

71.     The policies, practices and/or alleged customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Charles Hicks because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

72.     But for the belief that they would be protect – both by fellow officers and by the City of Akron Police Department – from serious consequences, Defendants would not have engaged in the conduct that resulted in the injuries to Plaintiff.

73.     The interrelated polices, practices and customs, as alleged in this complaint, individually and together were maintained, and implemented with deliberate indifference and encouraged the Defendant officers to commit the acts alleged in this complaint against the Plaintiff.

74.     The City of Akron therefore acted as the moving force behind the direct and proximate causes of the violations of Charles Hicks' constitutional rights and all injuries and damages suffered by him.

75.     Defendants are jointly and severally liable for this conduct.

## FOURTH CLAIM FOR RELIEF
### (State Law Claim for Assault and Battery by Charles Hicks against Defendant Turnure)

76.     All of the foregoing paragraphs are incorporated as though fully set forth here.

77.     The conduct of Defendant Officer Turner with respect to Charles Hicks created with in Plaintiff the apprehension of an imminent, harmful, and offensive touching and constituted a harmful and

15

offensive touching, knowingly and without legal justification.

78.   Defendants are jointly and severally liable for this conduct.

## FIFTH CLAIM OF RELIEF
### (State Law Claim for Negligence – Willful, Wanton, and/or Reckless Conduct by Defendant Turnure)

79.   All of the foregoing paragraphs are incorporated as though fully set forth here.

80.   Defendant Turnure failed to exercise due care and acted in a willful, wanton, and reckless manner while engaged in police functions and activities that culminated in the above-described damages and injuries to Charles Hicks.

81.   Defendant's reckless, wanton, and/or willful conduct proximately caused the physical and psychological damages to Charles Hicks.

82.   As a direct and proximate result of the misconduct of Defendant Turnure,  Hicks suffered and continues to suffer injuries and damages.

83.   Defendants are jointly and severally liable for this conduct.

## SIXTH CLAIM FOR RELIEF

### (State Law Claim For False Arrest By Charles Hicks Against Defendants Turnure,  White, Nan And Barnes)

84.   All of the foregoing paragraphs are incorporated as though fully set forth here.

85.   Defendants intentionally and unlawfully detained and caused the arrest of Charles Hicks without privilege, against his consent, and without probable cause.

86.   Charles Hicks' arrest, unsupported by probable cause, was in violation of the law of the State of Ohio.

87.   Defendants cause the illegal arrest, detention, imprisonment, and institution of legal proceedings against Plaintiff Hicks.

16

88.    Defendants' actions were willful, wanton, and/or reckless.

89.    Defendants' actions and conduct constitute false arrest in violation of Ohio Law.

90.    As a direct and proximate result of Defendants' misconduct, Charles Hicks suffered and
continues to suffer injuries, including but not limited to the loss of liberty, emotional
distress, loss of reputation, costs, and other damages as set forth in this Complaint.

91.    Defendants are jointly and severally liable for this conduct.

**<u>SEVENTH CLAIM FOR RELIEF</u>**

**(State Law Claim for Malicious Prosecution  against Defendants City of Akron,
Turnure,  White, Nan And Barnes)**

92.    All paragraphs contained in this complaint are incorporated as if fully rewritten herein.

93.    Defendants acting maliciously, instituted, participated in, or continued the prosecution of
Charles Hicks without probable cause.

94.    As a result of the criminal prosecution, Charles Hicks was unlawfully seized and deprived
of liberty.

95.    Defendant City of Akron offered Charles Hicks a plea deal that included a dismissal of
the resisting arrest charge conditioned on Hicks signing a release agreeing not to sue the
City of Akron or the police officers involved in his arrest and relieving the same of any
liability associated with his arrest. Hicks refused the plea offer and refused to sign the
release.

96.    Charles Hicks criminal prosecution terminated when he entered a No Contest Plea to
resisting arrest. The domestic violence charge was dismissed.

97.    Defendants committed these actions intentionally, maliciously, culpably, in bad faith, and/or in a willful, wanton, or reckless manner and in reckless disregard of Charles Hicks' rights.

98.    As a direct and proximate result of this malicious prosecution, Charles Hicks suffered injuries, including but not limited to loss of liberty, emotional distress, and other damages as set forth in this Complaint.

## EIGHTH CLAIM FOR RELIEF

### (42 U.S.C. §1983 Claim for Malicious Prosecution  against Defendants City of Akron, Turnure,  White, Nan And Barnes)

99.    All paragraphs contained in this complaint are incorporated as if fully rewritten herein.

100.    Defendants caused, instigated, influenced, or participated in the decision to prosecute Hicks knowing there was no probable cause for the criminal prosecution.

101.    The case was terminated upon Hicks' No Contest plea.

102.    Defendants made statements to prosecutors and their supervisors with the intent of exerting influence to institute and continue the judicial proceedings.

103.    Defendants deliberately engaged in arbitrary and conscience-shocking conduct that contravened fundamental canons of decency and fairness and violated Charles Hicks' substantive due process rights and in violation of the Fourteenth and Fourth Amendments to the United States Constitution.

104.    As a direct and proximate cause of Defendants' misconduct, Charles Hicks suffered and continues to suffer as set forth in this Complaint.

105.    Defendants are jointly and severally liable for this conduct.

18

## NINTH CLAIM FOR RELIEF

### (Governmental Liability – Failure To Train And Supervise And Discipline)

106.    All of the foregoing paragraphs are incorporated as if though fully set forth here.

107.     Chief Michael Caprez has failed to adequately train and supervise his police officers concerning

proper police procedures and constitutional limitations relative to the use of force and restraint and

the proper procedures and constitutional limitations for assessing, planning, and executing citizen

apprehensions, detention, seizure, and confinement.  These failures are a proximate cause of the

constitutional violations set forth in this Complaint, and the conspiracy to protect Defendant

Turnure and other defendants is contrary to written rules and policies and  demonstrates that a

habit, pattern, and practice of violating official policies exists within the offices of the City of

Akron Police Department.

108.    The Chief failed to institute and/or enforce adequate policies and procedures for reality-based

training governing the use of force, apprehension, detention, seizures relative to citizens and

relative to utilization of force. The policies, procedures, and failures mentioned exhibit the Chief's

deliberate indifference to the constitutional rights of Ohio's citizens, including Charles Hicks.

109.    Defendants are jointly and severally liable for this conduct.

## TENTH CLAIM FOR RELIEF
### (Conspiracy)

110.    All of the forgoing paragraphs are incorporated as though fully set forth here.

111.    All the Defendants
  a.  had an objective to be accomplished;
  b.  had an agreement on  the object or course of action;
  c.  performed one or more unlawful overt acts; and
  d.  caused Charles Hicks damages that were a direct result of those acts.

112.    The Defendants agreed, expressly and/or implicitly through their actions and in

violations of their duty, that the object of their course of action was to coverup Turnure's action and not file accurate reports of all of the details surrounding Hick's arrest.

113.  The actions of the Defendant Officers as alleged in this count of the complaint were the direct and proximate cause of the constitutional violations, loss of liberty, emotional distress and other damages as set forth in this Complaint.

114.  Defendants are jointly and severally liable for this conduct.


## ELEVENTH CLAIM FOR RELIEF
### (Intentional Infliction Of Emotional Distress)

115.   All of the foregoing paragraphs are incorporated as though full set forth here.

116.   Defendant Turnure intentionally and deliberately inflicted emotional distress on Plaintiff.

117.  Defendant Turnure  knew or should have known that emotional distress was the likely result of his conduct.

118.   Defendant Turnure's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

119.  The actions of the Defendant Turnure were the cause of Charles Hicks' distress.

120.   Charles Hicks is a reasonable person.

121.   The emotional distress sustained by Charles Hicks was severe and of a nature that no reasonable person could be expected to endure.

122.  As a result of the Defendant Turnure's extreme and outrageous conduct, Plaintiff was, is, and  with a high degree of likelihood, will continue to be  emotionally distressed due to the intentional acts of Defendant Turnure.

123.  As a result of the Defendant Turnure's extreme and outrageous conduct, Charles Hicks has suffered  and will continue to suffer mental pain and anguish, severe  emotional trauma, embarrassment, and humiliation.

124.  Defendants are jointly and severally liable for this conduct

**PRAYER FOR RELIEF**

Plaintiff demand that judgment be entered in his favor on all counts and pray the court to award the following relief:

a.   An award of actual and/or compensatory damages against all defendants in an amount to be determined at trial that will fully and fairly compensate Plaintiff for the injuries and damages that he suffered;

b.  An award of punitive damages against Defendant Officers in an amount to be determined at trial that will serve to adequately punish and deter the acts and omission alleged in this complaint[3].

c.  Declaratory and injunctive relief against the City of Akron enjoining polices, practices, and customs shown to encourage the use of excessive and unreasonable force, false arrest, malicious prosecution against civilians, particularly African Americans, and ordering the institution of polices, procedures, and training for the Akron Police Department to bring them into compliance with constitutional standards;

---

[3] Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights." Smith v. Wade, 461 U.S. 30, 50 –51(1983); Clark v. Taylor, 710 F.2d 4, 14(1st Cir. 1983).

d.   An award of attorneys fees and the cost of this action pursuant to 42 U.S.C. § 1988; and

e.   All such other relief to which Plaintiff is entitled and/or this Court deems equitable.


**A TRIAL BY JURY IS REQUESTED ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.**


Respectfully submitted,


*/S/ EMSipplen*
_____

Dated: January 2, 2023                    Eddie Sipplen (OH S.Ct. # 0076712)
Eddie Sipplen Attorney At Law, LLC
1655West Market Street, Ste 505
Akron, OH 44313
Ph: 330-374-5600
Email: esipplen@sipplen.com

***Counsel for Plaintiff***

22