# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES HICKS, II, | ) | CASE NO. 5:23-cv-1 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| CITY OF AKRON, OHIO, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Presently before the Court are two motions, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings. Specifically, the Court will address herein: (1) the motion of defendants John Turnure ("Officer Turnure"), Samnang Nan ("Officer Nan"), Gary White ("Officer White"), Paul Barnes ("Officer Barnes"), Heath Smith ("Officer Smith"), and Scott Lietke ("Officer Lietke") (collectively, the "Officer Defendants"), and the City of Akron (the "City") for judgment on the pleadings (Doc. No. 27 (City Defendants MJOP)); and (2) the motion of defendant Mike Caprez ("Chief Caprez") for judgment on the pleadings. (Doc. No. 29 (Chief Caprez MJOP). Both motions are fully briefed and ripe for resolution.[1] As explained below, the motions are granted and this action is dismissed with prejudice.

## I.     BACKGROUND

Except as otherwise noted, all background facts are taken from the first amended complaint ("FAC"). (Doc. No. 4 (FAC).) Additionally, all allegations contained in the FAC are taken as true

---

[1] (*See* Doc. No. 37 (City Defendants MJOP Response); Doc. No. 39 (City Defendants MJOP Reply); Doc. No. 38 (Chief Caprez MJOP Response); Doc. No. 40 (Chief Caprez MJOP Reply).)

for purposes of the present motions. On February 7, 2021, Akron police officers Hensley and Hall[2] responded to the home of plaintiff Charles Hicks ("Hicks") in regard to a call involving a domestic disturbance. (*Id.* ¶ 15.) The officers knocked on Hicks's door, and, when he answered, they asked Hicks to come outside and speak with them. (*Id.*) According to the amended complaint, "Hicks refused [the officers' requests] and started ranting at the officers." (*Id.* ¶ 16.) More officers arrived, including Officers White and Turnure, and most of the exchange between Hicks and the officers on scene was captured on Officer Turnure's Body Worn Camera. (*Id.* ¶¶ 17, 21; Doc. No. 27-1 (Declaration of Samantha L. Matz) ¶ 3; *see also* Doc. No. 27-1, Exhibit 1 (Video from Officer Turnure's Body Worn Camera).) The officers repeated their request that Hicks exit his home, and, when Hicks stepped onto his front porch, the officers asked Hicks to step off the porch and into the yard to talk to them. (Doc. No. 4 ¶ 17.) At no time prior to his arrest did "any officer advise Hicks that he was under arrest." (*Id.*)

While the footage from Officer Turnure's body worn camera clearly shows Hicks as animated and agitated as he spoke with the officers, Hicks alleges that he did not threaten the officers or direct "threatening gestures" or "aggressive actions towards the officers in an attempt to resist arrest." (*Id.* ¶ 18; *see* Doc. No. 27-1, Exhibit 1, at 02:50–03:25.[3]) According to the FAC, Officers White and Turnure, nevertheless, "made the decision to go 'hands on' and arrest Hicks." (Doc. No. 4 ¶ 19.) According to the FAC, the officers, including Officer Turnure, "attacked Hicks

---

[2] The FAC does not identify the first names of either Hensley or Hall, and neither individual is a party to this lawsuit. Moreover, the deadline for amending the pleadings or adding parties has passed. (*See* Doc. No. 26, at 1.)

[3] While he stood on his front porch, Hicks raised his voice and repeatedly stated that he believed one of the officers present was "being disrespectful" to him. He also can be heard in the video speaking over the officers and attempting to prevent the officers from speaking. Additionally, while the full context is not clear from the video, on account of Officer Turnure arriving after Officers Hensley and Hall already began speaking with Hicks, Hicks can be heard saying "if you are going to shoot me, then shoot me. . . . Kill me then []. Kill me then [.]" (*See* Doc. No. 27-1, Exhibit 1, at 02:50–03:25.)

and slammed him to the ground from his porch." (*Id.* ¶ 20.)

The FAC described the events leading up to Hicks's arrest this way:

Per the video footage from Officer Turnure's Body Worn Camera while Hicks is on his back and subdued by at least six other officers:

    a.  04:12 Turnure's [k]nee is on the right shoulder of Hicks.

    b.  04:13 Turnure takes a handful of snow and places it over the nose and mouth of Hicks.

    c.  04:19 Turnure removes his hand from the mouth and nose of Hicks, gathers more snow and places it back over the mouth of Hicks.

    d.  04:22 Turnure grabs more snow and repeats the process of grabbing snow and placing his hand over the mouth and nose of Hicks for a third time.

    e.  04:40–04:42 Turnure's knee can be seen on Hick's upper body area near his neck.

Through the entirety of Turnure smothering Hicks with the snow, the body worn camera audio shows that Hicks was struggling to breath and advising officers that he could not breath. In spite of this, Turnure continued his activities restricting Hicks's airway and none of the other arresting officers stopped him.

Hicks was subsequently arrested and transported to the Summit County Jail without receiving any medical treatment.

(*Id.* ¶¶ 21–23.) As depicted in the body worn camera footage, Hicks was placed in handcuffs at 04:52 on the recording. (Doc. No. 27-1, Exhibit 1.)

Hicks was ultimately charged in Akron Municipal Court with domestic violence and resisting arrest. (Doc. No. 4 ¶ 37; Doc. No. 27-1 ¶ 4, Exhibit 2 (Case No. 21-cr-01089 Transcript of Proceedings)); Akron Municipal Court, Online Docket for Case No. 21-cr-01089 viewed at: https://courts.akronohio.gov/AkronCaseInformation/cases/criminal/21-CR-01089-001, last visited 2/22/2024.)

On July 22, 2022, Hicks entered a plea of "no contest" to "resist[ing] arrest as officers attempted

to place handcuffs on him." (Doc. No. 27-1, Exhibit 2 (Transcript of Guilty Plea Hearing), at 11–12.) The municipal judge accepted Hicks's change of plea and found him guilty of resisting arrest. (*Id*. at 15; *see* Doc. No. 4 ¶ 37.) After the municipal court adjudged Hicks guilty of resisting arrest, the domestic violence charge was dismissed. (Doc. No. 4 ¶ 37; Doc. No. 27-1, Exhibit 2, at 15.)

Hicks alleges that, prior to his entering a no contest plea to resisting arrest, the Officer Defendants "jointly prepared and or conspired with one another to prepare false, misleading, and incomplete official reports and to give [a] false[,] incomplete, and misleading version of events to their superiors and to the public." (Doc. No. 4 ¶ 24.) According to Hicks, the purpose of this alleged conspiracy was to "coverup Turnure's action[s]" leading up to Hicks's arrest. (*Id*. ¶ 112; *see id*. ¶ 26.)

On January 2, 2023, Hicks filed suit in federal court. (*See* Doc. No. 1 (Complaint).) The FAC raises eleven claims: excessive force, under 42 U.S.C. § 1983, against Officer Turnure (First Claim); unconstitutional seizure, under § 1983, against Officers Turnure, Barnes, and Nan (Second Claim);[4] *Monell*[5] claim for unconstitutional seizure, under § 1983, against the City (Third Claim); assault and battery, under state law, against Officer Turnure (Fourth Claim); negligence, under state law, against Officer Turnure (Fifth Claim); false arrest, under state law, against Officers Turnure, White, Nan, and Barnes (Sixth Claim); malicious prosecution, under state law, against the City and Officers Turnure, White, Nan, and Barnes (Seventh Claim); malicious prosecution, under § 1983, against the City and Officers Turnure, White, Nan, and Barnes (Eighth Claim);

---

[4] The FAC suggests that this claim is also brought against Hall and an individual with the last name of "Romine[.]" As previously noted, Hall is not a party-defendant. Likewise, Romine is not identified as a defendant in this action. (*See id*. at 1, 10.)

[5] *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

failure to train and supervise against Chief Caprez (Ninth Claim); conspiracy against all defendants (Tenth Claim); and intentional infliction of emotional distress, under state law, against Officer Turnure (Eleventh Claim). (*See generally* Doc. No. 4.)[6]

On April 26, 2023, the Court conducted a telephonic case management conference wherein it set dates and deadlines to govern the case. (Minutes of Proceedings [non-document], 4/26/2023; Doc. No. 16 (Case Management Plan and Trial Order "CMPTO").) At Hicks's request, the Court continued the dates and deadlines. (Minutes of Proceedings [non-document], 9/18/2023; Doc. No. 26 (Amended CMPTO; *see* Doc. No. 24 (Motion to Extend Fact Discovery); Doc. No. 25 (Motion to Extend Expert Discovery).) The pending motions for judgment on the pleadings were filed on October 3, 2023 (Doc. No. 27) and October 6, 2023 (Doc. No. 29).

## II.     STANDARD OF REVIEW

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted).

---

[6] From the FAC, it is not entirely clear which claims have been brought against any given defendant, as even claims that appear to be brought against a limited number of defendants (or one defendant) provide that "all defendants" are jointly and severally liable for damages therein. (*See, e.g.*, Doc. No. 4 ¶¶ 78, 109.)

"A complaint need not contain 'detailed factual allegations.' But it must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *LM Ins. Corp. v. Criss for Estate of Szuhay*, 716 F. App'x 530, 533 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Mere labels . . . are not enough[,]" *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017), and the Court also "need not accept legal conclusions in the complaint as being true[,]" *Eye Ctrs. of Am., LLC v. Series Protected Cell 1, a Series of Oxford Ins. Co. TN, LLC*, No. 22-5138, 2022 WL 13983763, at *2 (6th Cir. Oct. 24, 2022) (citing *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020)), unless the complaint has "supported [them] with enough pleaded facts[.]" *Bates*, 958 F.3d at 480. Nor should a court accept as true "'a legal conclusion couched as a factual allegation[.]'" *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

In ruling on a Rule 12(c) motion, the court considers all available pleadings and may also consider: "(1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted).

In the present case, the Court finds that it may rely on the footage from Officer Turnure's body worn camera without converting the motion to one for summary judgment because the footage was referred to repeatedly in the pleadings and is central to Hicks's allegations.[7] *See id.*; *see also Hanson v. Kwiatkowski*, No. 3:19-cv-46, 2021 WL 4254865, at *4 (E.D. Tenn. Sept. 17, 2021) ("Since the plaintiff refers to the body camera footage in his complaint and the events captured by the body camera footage are central to plaintiff's claims, the Court may consider the body camera footage in its review of the motion to dismiss.") (*See, e.g*., Doc. No. 4 ¶¶ 21–22.) Additionally, the Court finds that it may take judicial notice of information from the docket of the Akron Municipal Court, which the Court accessed online, from Hicks's criminal case.[8] *See Chase v. MaCauley*, 971 F.3d 582, 587 n.1 (6th Cir. 2020) (taking judicial notice of information from other courts' websites (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) ("[F]ederal courts may take judicial notice of proceedings in other courts of record."))).

### III.     MOTION OF THE CITY AND THE OFFICER DEFENDANTS

In their motion, the City and the Officer Defendants maintain that Hicks's claims for excessive force (First Claim), unconstitutional seizure (Second Claim), *Monell* liability (Third Claim), malicious prosecution (Eighth Claim), and conspiracy (Tenth Claim) are barred by his state court conviction for resisting arrest. (Doc. No. 27, at 6; *see id*. at 6–11.) Additionally, they

---

[7] In addition to making repeated references to the body worn camera footage throughout the FAC, Hicks has embedded a still image from the video in the FAC. (Doc. No. 4, at 7.) There is, therefore, no question that the body worn camera video is integral to Hicks's claims.

[8] Hicks complains that the City and the Officer Defendants may not rely on the declaration of Samantha Matz, an administrative assistant employed by the City of Akron's legal department, in support of the Rule 12(c) motion, because the affidavit is not referenced in or relied upon by the FAC. (Doc. No. 37, at 7; *see* Doc. No. 27-1 ¶ 2.) The declaration was offered solely to authenticate the body worn camera video recording, which Hicks concedes the Court may consider, and the state court docket, of which the Court may take judicial notice. Given that Hicks does not challenge the authenticity of either piece of evidence, his challenge to this authenticating declaration is without merit.

posit that Hicks's state law claims for assault and battery (Fourth Claim), negligence (Fifth Claim), false arrest (Sixth Claim), conspiracy (to the extent it is raised as a state claim), and intentional infliction of emotional distress (Eleventh Claim) are time-barred. (*Id*. at 11; *see id*. at 11–13.) These defendants further argue that Hicks's claims for malicious prosecution and conspiracy also fail as a matter of law. (*Id*. at 13; *see id*. at 13–15.) The Court takes each argument in turn.

A. **Claims Barred by Hicks's State Court Conviction**

In *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the Supreme Court held that, "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction . . . invalid, a § 1983 plaintiff must prove that the conviction . . . has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." It is well settled under *Heck* that when an individual brings a § 1983 claim against an arresting officer, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[;] if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction . . . has been invalidated. " *Id*. at 487; *see Muhammad v. Close*, 540 U.S. 749, 754–55, 124 S. Ct. 1303, 158 L. Ed. 2d 32 (2004) (summarizing that the question under *Heck* is whether the claim could "be construed as seeking a judgment at odds with [the plaintiff's] conviction[.]"). If so, the claim is barred. *See Muhammad*, 540 U.S. at 755.

In the Sixth Circuit, "there are two circumstances under which *Heck* may apply to bar a § 1983 claim." *Hayward v. Cleveland Clinic Found*., 759 F.3d 601, 608 (6th Cir. 2014). "The first is when the criminal provision makes the lack of excessive force [or the lack of an illegal entry]

an element of the crime." *Id*. (quoting *Scriber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (further citations omitted) (bracketed language supplied by *Hayward*)). "The second is when excessive force [or illegal entry] is an affirmative defense to the crime . . . ." *Id*. at 608–09 (quoting *Scriber*, 596 F.3d at 334 (further citations omitted) (bracketed language supplied by *Hayward*)). "Therefore, in [the Sixth] Circuit, if a plaintiff asserts a claim that contradicts an element of the underlying criminal offense, or if that claim could have been asserted in criminal court as an affirmative defense, *Heck* applies to bar the § 1983 suit." *Id*. at 609.

In *Hayward*, the plaintiff-arrestee pleaded guilty to resisting arrest under Ohio Rev. Code § 2921.33[9] when he fled from police following an encounter at his parents' home. *Hayward*, 759 F.3d at 606. The plaintiff-arrestee and his parents subsequently brought a § 1983 action against the officers at the scene alleging, among other things, that the officers used excessive force against him. *Id*. The Sixth Circuit held that because the plaintiff-arrestee was found guilty of violating Ohio Rev. Code § 2921.33 *Heck* barred him from bringing an excessive force claim against the arresting officers for conduct that occurred prior to, and during, the arrest. *Id*. at 613. Noting that § 2921.33 requires the existence of a "lawful arrest," the court surveyed federal and Ohio court decisions interpreting the statute and found that excessive force can, at the very least, be an affirmative defense to a resisting arrest charge, which would seem to trigger the second circumstance invoking the *Heck* bar. *Id*. at 610–11. The court also noted, however, that it had previously ruled that *Heck* would not bar § 1983 suits alleging *post-arrest* excessive force. *Id*. at 611 (citing *Sigley v. Kuhn*, 205 F.3d 1341 (Table), 2000 WL 145187, at *1 (6th Cir. 2000)

---

[9] Ohio Rev. Code § 2921.33(a) provides that "[n]o person, recklessly or by force, shall resist arrest or interfere with a lawful arrest of the person or another."

(emphasis in *Hayward*)). The Sixth Circuit, therefore, cautioned that a court "must carefully examine the facts and the temporal sequence of the underlying offense and the alleged unconstitutional conduct to determine whether the alleged excessive force is used *after* the suspect ceases resisting arrest." *Id.* at 612 (quotation marks and citation omitted) (emphasis in original). In the case before it, the court found that the facts demonstrated that the "force occurred before and during the resistance and was only used to procure the arrest." *Id.* Because the force occurred *pre-arrest*, the court determined that if plaintiff-arrestee were to prevail on his excessive force claim, it would impugn the integrity of the underlying state court conviction and would run afoul of *Heck*. *Id.* at 613.

Hicks was convicted of resisting arrest pursuant to Akron Code of Ordinances ("A.C.O.") § 136.13, which mirrors Ohio Rev. Code § 2921.33. Consistent with its state counterpart, § 136.13 provides, in relevant part, that "[n]o person, recklessly or by force, shall resist or interfere with a law enforcement officer during a *lawful arrest* of the person or another person." A.C.O. § 136.13(A) (emphasis added). Based on *Hayward* and the governing Supreme Court law, with respect to each claim, the Court must determine if the claim contradicts an element of § 136.13, or if the claim could have been asserted in the criminal court as an affirmative defense. *See Hayward*, 759 F.3d at 609. If the answer to either question is "yes," then the claim would "be construed as seeking a judgment at odds with" Hicks's conviction rendering the claim barred as a matter of law by *Heck*. *See Mohammad*, 540 U.S. at 754–55.

### 1. *Excessive Force against Officer Turnure (First Claim)*

In his first claim, Hicks alleges that Officer Turnure violated his "right to be free from unreasonable seizures by the use of force in violation" of Hicks's constitutional rights. (Doc. No.

4 ¶ 42.) As is clear from the FAC, the only force Hicks alleges was employed by Officer Turnure against Hicks occurred *prior* to his arrest. (*Id*. ¶¶ 20–22; *see also id.* ¶ 23 ("Hicks was *subsequently* arrested" (emphasis added)). In fact, after Hicks was arrested, there is no allegation that any officer employed force of any kind against Hicks.[10] (*See generally id.*) Because the relevant Akron ordinance, like the Ohio statute, requires the existence of a "lawful arrest," the use of excessive force by Officer Turnure (or other officers) to effectuate that arrest would have, at a minimum, been an affirmative defense that could have been raised by Hicks in his criminal case had he elected to go to trial. *See Hayward*, 759 F.3d at 611 (finding excessive force to be an affirmative defense under the identical state statute (Ohio Rev. Code § 2921.33)); *see also Akron v. Callaway*, 835 N.E.2d 736, 744–45 (Ohio Ct. App. 2005) (finding a prior version of O.A.C. § 136.13 unconstitutional because, unlike its current version and its state counterpart Ohio Rev. Code § 2921.33, it prohibited resisting *any* arrest, lawful or otherwise). Hicks's excessive force claim, therefore, impermissibly attacks Hicks's state court conviction and is barred by *Heck*.

Hicks does not deny that he was found guilty of resisting arrest. (*See* Doc. No. 37, at 7.)

---

[10] In his reply brief, Hicks argues for the first time that he was already in handcuffs and under arrest when Officer Turnure allegedly employed excessive force. (*See* Doc. No. 37, at 2.) This belated argument directly contradicts both the FAC and Officer Turnure's body worn camera footage, which Hicks concedes the Court may consider in ruling on the pending dispositive motions. (*See id*. at 6.) In the FAC, Hicks alleges that the force administered by Officer Turnure occurred from 04:12 to 04:42 in the video, and that Hicks was arrested thereafter. (Doc. No. 4 ¶ 21; *see id.* ¶ 23 ("Hicks was *subsequently arrested* and transported to the Summit County Jail . . . ." (emphasis added)). Hicks cannot simply contradict his pleadings by means of unsupported statements in an opposition brief. Further, it is clear from the video that Hicks was still resisting (and both hands were not yet cuffed) when the force was applied, and that he was not secured in handcuffs until 04:52 in the video, ten seconds *after* the force alleged in the FAC was administered. Accordingly, any request to amend his pleadings to allege contrary allegations, such as those offered in Hicks's reply brief, would be denied as futile. *See Carson v. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (reciting that leave to amend should be denied when, for example, the amendment would be futile). Hicks also suggests that he should be permitted to conduct discovery to develop a "fuller record[.]" (Doc. No. 37, at 11.) In the face of a properly supported Rule 12(c) motion, however, there is no right to develop new or different claims that do not appear in the pleadings. *See, e.g., Durand v. Hanover Ins. Grp., Inc*., 294 F. Supp. 3d 659, 688 (W.D. Ky. 2018) (stating that civil discovery may not be used for the purpose of "troll[ing] for new claims or causes of action" (quotation marks and citations omitted)).

He insists, however, that his conviction cannot be relied upon to bar his civil rights claims because it was the result of a "no contest" plea. (*Id.* at 7–8.) Citing Fed. R. Evid. 410, and Ohio Rev. Code § 2937.07,[11] Hicks argues that his "no contest" plea cannot be used against him for any reason. (*Id.*) This argument misses the point. It is Hicks's *conviction*, regardless of the manner in which it was obtained, that governs the analysis under *Heck*. *See Muhammad*, 540 U.S. at 754–55 (summarizing that the question under *Heck* is whether the claim could be "construed as seeking a judgment at odds with [the] *conviction*") (emphasis added); *see e.g., Hayward*, 759 F.3d at 613 (affirming the dismissal of a § 1983 action because a successful judgment under § 1983 "would render invalid a *conviction* for resisting arrest") (emphasis added). Because his state conviction remains undisturbed, Hicks's excess force claim is barred.

Indeed, Sixth Circuit has roundly rejected the argument Hicks now advances. *See Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988). In *Walker*, the court ruled that while Rule 410 prohibits the use of a *nolo contendere* plea "against the defendant who made the plea" in a subsequent civil or criminal case, it does not permit a party to hide behind a "no contest" plea to his advantage to prosecute civil rights claims that would otherwise be barred by his own legal admissions in open court. *Id.* (declining "to interpret [Rule 410] so as to allow [a plaintiff-arrestee] to use the plea offensively, in order to obtain damages, after having admitted to facts which would indicate no civil liability on the part of the arresting police"). In other words, the Sixth Circuit has "declined to allow Rule 410 to become an offensive weapon and thereby undermine its basic purpose: to promote settlement by ensuring that a defendant need not fear later repercussions from

---

[11] Ohio Rev. Code § 2937.07 provides, in part, that a plea of "'no contest' or words of similar import shall not be construed as an admission of any fact at issue in the criminal charge in any subsequent civil or criminal action or proceeding."

cooperating with the judicial system." *Shelton v. City of Taylor*, 92 F. App'x 178, 183 (6th Cir. 2004) (citing *Walker*, 854 F.2d at 143); *see Bazzy Investments v. City of Dearborn*, No. 16-cv-10879, 2018 WL 10962765, at *5 (E.D. Mich. Aug. 2, 2018) (citing *Walker* and *Shelton* and noting that "when a party pleads no-contest they cannot then use that legal compromise with the judicial system to their advantage in a subsequent offensive claim"); *see also Jackim v. Sam's East, Inc.*, 378 F. App'x 556, 561 (6th Cir. 2010) ("[Plaintiff] cannot challenge the officer's probable cause that she committed a crime because she conceded that fact when she pleaded no contest."). Because the use of Hicks's "no contest" plea does not offend Fed. R. Evid. 410, it is properly considered by the Court to bar Hicks's excessive force claim. *See, e.g., Spencer v. Cleveland Clinic Found.*, No. 1:21-cv-1909, 2022 WL 2954175, at *7–8 (N.D. Ohio July 26, 2022) (granting motion for judgment on the pleadings where plaintiff's excessive force claim was barred by *Heck* based on plaintiff's Ohio conviction, via a "no contest" plea, for resisting arrest).

### 2. *Unconstitutional Seizure (Second Claim)*

In his second claim, Hicks alleges that Officers Turnure, Barnes, and Nan[12] violated his constitutional right to be free from unreasonable seizure and his right to due process. (Doc. No. 4 ¶ 47.) He realleges that Officer Turnure "subjected [him] to the use of excessive force[,]" and that Officers Turnure, Barnes, and Nan "further deprived" him of his "right to be free from unreasonable seizure by causing his arrest, without privilege, against his consent, and without probable cause[.]" (*Id.* ¶¶ 48–49.)

---

[12] The Second Claim is also purportedly brought against Hall and Romine. (*See* Doc. No. 4, at 10.) As previously noted, these individuals are not defendants in this action.

Like the First Claim, the Second Claim is also barred by *Heck*. Again, a lawful arrest is an element of the crime of resisting arrest under O.A.C. § 136.13. *See also Hayward*, 759 F.3d at 609 ("The Ohio resisting arrest statute requires as an element of the offense a 'lawful arrest.'" (quoting Ohio Rev. Code § 2921.33)). By now challenging the lawfulness of the arrest (*see* Doc. No. 4 ¶ 49 (alleging that he was seized unreasonably without probable cause)), Hicks is attacking an element of his underlying criminal conviction (*i.e.*, the existence of a "lawful arrest"), the first of two circumstances invoking *Heck*. *See Hayward*, 759 F.3d at 608–09.

Further, as defendants accurately observe, a plaintiff may not utilize a § 1983 action to re-visit issues that were decided (or could have been decided) in a prior criminal case. (Doc. No. 27, at 8–9 (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005) ("As a general rule, a federal civil action brought under § 1983 is not a venue for re-litigating issues that were decided in a prior state criminal case.")). "[P]leas in state court made by [a state court defendant] and the finding of guilt . . . estop [the individual] from now asserting in federal court that the . . . police officers acted without probable cause." *Walker*, 854 F.2d at 142. In *Walker*, the plaintiffs brought a § 1983 in federal court after pleading guilty in state court to disorderly conduct, suggesting that their convictions were not supported by probable cause. The district court denied the defendant officers qualified immunity on summary judgment, based upon the parties' disputed account of the facts leading up to the plaintiffs' arrests. *Id*. at 141. The Sixth Circuit reversed, finding that having voluntarily entered into guilty pleas, the plaintiffs could not now allege that they were subjected to false arrest and false imprisonment. *Id*. at 142.

Here, by voluntarily pleading no contest to resisting arrest, Hicks is estopped from asserting, as he does in the Second Claim, that his arrest was without probable cause. (*See* Doc. No. 4 ¶ 49.) Officers Turnure, Barnes, and Nan, therefore, are entitled to judgment on the pleadings on this claim. *See Jackim*, 378 F. App'x at 561 (finding plaintiff was estopped from asserting a § 1983 action for unlawful seizure based on a lack of probable cause following her "no contest" plea in state court to attempted disorderly conduct (citing, among authority, *Walker, supra*)).

### 3. *Monell Liability (Third Claim), Malicious Prosecution (Eighth Claim), and Conspiracy (Tenth Claim)*

In his Third Claim, Hicks avers that the City is responsible for the alleged unlawful actions of the Officer Defendants, claiming that these actions were "pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of the City[.]" (Doc. No. 4 ¶ 54.) Municipalities may be held liable for the constitutional violations of their employees, but only where the municipality's policy or custom led to the violation. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Moreover, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citation omitted). Because Hicks is barred by his state court conviction for resisting arrest from alleging facts that, if believed, would establish the existence of a constitutional violation, he is precluded from maintaining a *Monell* claim against the City. *See id*. The City is entitled to judgment on the pleadings on the Third Claim.

In the Eighth Claim, Hicks alleges that the City and the Officer Defendants "caused, instigated, influenced, or participated in the decision to prosecute Hicks knowing there was no probable cause for the criminal prosecution." (Doc. No. 4 ¶ 100.) It is well settled that a malicious

prosecution claim, under Ohio law, fails when there is probable cause to initiate the proceedings against the accused. *See generally Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (a plaintiff asserting a malicious prosecution claim must show, among other things, that there was a lack of probable cause for the criminal prosecution (citations omitted)). By being convicted of resisting arrest, Hicks cannot, as a matter of law, establish there was not probable cause to support his arrest, and he is, therefore, barred from raising this claim. *See Walker*, 854 F.2d at 142 (A guilty plea does not qualify as a favorable termination of a criminal action and bars a malicious prosecution claim); *see also Fox v. De Soto*, 489 F.3d 227, 237–38 (6th Cir. 2007) (probable cause for arrest for disorderly conduct precluded arrestee's malicious prosecution claim against arresting officer, regardless of whether under § 1983 or state law).

The Tenth Claim alleges a conspiracy. In particular, Hicks asserts that all defendants conspired to " coverup [Officer] Turnure's action and not file accurate reports of all of the details surrounding Hick[s's] arrest." (Doc. No. 4 ¶ 112.) Elsewhere in the FAC, Hicks alleges that the Officer Defendants "jointly prepared and or conspired with one another to prepare false, misleading, and incomplete official reports and to give [a] false[,] incomplete, and misleading version of events to their superiors and to the public." (*Id*. ¶ 24.) Though unclear from the face of the FAC, the Court presumes that the claim was brought under federal law.

To prevail on a § 1983 civil conspiracy claim, a plaintiff must establish an actual deprivation of a constitutional right. *Jackim v. City of Brooklyn*, No. 1:05-cv-1678, 2007 WL 893868, at *16 (N.D. Ohio Mar. 22, 2007) (citations omitted). Hicks alleged only two constitutional violations against the defendants: (1) excess force (First Claim); and (2) unconstitutional seizure (Second Claim). Therefore, the First and Second Claims contain the only

alleged civil rights violations upon which Hicks's § 1983 conspiracy claim could be predicated.[13]

As set forth above, these claims are both barred by *Heck*. Because the conspiracy claim rises and

falls on the ability to assert (and ultimately prove) an underlying constitutional violation, Hicks's

inability to allege such a violation renders the conspiracy claim subject to dismissal. *See, e.g., id.*

("To the extent [plaintiff's] conspiracy claim is predicated on his unreasonable seizure/wrongful

arrest claim, that claim faces the same *Heck*-based bar that prohibits consideration of the

underlying claim.")

### B. Claims Barred by the Relevant Statutes of Limitations

The City and Officer Defendants argue that Hicks's state law claims for assault and battery,

negligence, false arrest, conspiracy (to the extent the claim is brought under Ohio law), and

intentional infliction of emotional distress are subject to dismissal for the additional reason that

they are time-barred.[14] "The statute of limitations is an affirmative defense and a plaintiff generally

need not plead the lack of affirmative defenses to state a valid claim." *Catalado v. U.S. Steel Corp.*,

676 F.3d 542, 547 (6th Cir. 2012) (citations omitted). The Sixth Circuit has held, however, that

"judgment on the pleadings under [Rule] 12(c) is uniquely suited to disposing of a case in which

a statute of limitations provides an effective bar against a plaintiff's claim." *Phelps v. McClellan*,

30 F.3d 658, 663 (6th Cir. 1994) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice and Procedure* § 1367 at 511 (1990)). The Court finds that it is evident from the face of

---

[13] This conclusion is also supported by the allegations in the FAC, wherein Hicks avers that defendants conspired for the purpose of covering up Officer Turnure's alleged use of excessive force by giving a false account of Hicks's arrest. (Doc. No. 4 ¶ 112.)

[14] Citing *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989), Hicks argued in his opposition brief that his § 1983 claims are timely under Ohio's general or residual two-year limitations period. (Doc. No. 37, at 10–11.) While this may be true, the City and the Officer Defendants only challenge the timeliness of Hicks's state law claims. (*See* Doc. No. 27, at 11–13.) The ruling in *Browning* is limited to the filing period for § 1983, and, therefore, has no bearing on the timeliness of Hicks's state law claims, which are governed by Ohio law. *See Browning*, 869 F.2d at 992.

the FAC that each of the aforementioned state law claims is time-barred.

Beginning with Hicks's assault and battery claim (Fourth Claim), Ohio Revised Code § 2305.111(B) states that "an action for assault or battery shall be brought within one year after the cause of action accrues." Ohio Rev. Code § 2305.111(B). Similarly, claims of false arrest (*see* Sixth Claim) also have a one-year statute of limitations. *See Wheeler v. Newell*, 2009 WL 3720663, at *2 (N.D. Ohio Nov. 5, 2009) (citing *Mayes v. City of Columbus*, 664 N.E.2d 1340 (Ohio Ct. App. 1995); *Francis v. City of Cleveland*, 605 N.E.2d 966 (Ohio Ct. App. 1992)). Hicks's causes of action for assault and battery and false arrest accrued on the date of the incident, namely, his arrest: February 7, 2021. (*See* Doc. No. 4 ¶ 1; *see also id.* ¶¶ 20–22, 77, 85–90.) Hicks did not file his federal action until January 2, 2023, nearly two years after his arrest. *See, e.g., Jones v. City of Cleveland*, No. 1:15-cv-1190, 2016 WL 1626855, at *4 (N.D. Ohio Apr. 25, 2016) (finding the plaintiff's state law assault and battery claim was time-barred under Ohio Rev. Code § 2305.111(B) because it was filed more than a year after arresting officers shot plaintiff); *Wheeler*, 2009 WL 3720663, at *2 (assault and battery, false arrest, and false imprisonment claims barred because they were not filed within one year of plaintiff's arrest). Hicks's Fourth and Sixth Claims are time-barred.

Hicks's negligence claim (Fifth Claim) is also based on the same actions of Officer Turnure; namely the officer's alleged "offensive touching[.]" (*See* Doc. No. 4 ¶¶ 77, 80–82.) Hicks's injury (if any), therefore, arises from the same alleged assault and battery occurring immediately prior to his arrest on February 7, 2021. As the Ohio Supreme Court has observed, "[w]here the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence."

*Love v. City of Port Clinton*, 524 N.E.2d 166, syllabus, 168 (Ohio 1988) (refusing to permit "clever pleading" to transform the nature of a tort claim and recognizing that "[n]early any assault and battery can be pled as a claim for negligence") (citation omitted). Because the essential character of Hick's negligence claim is the alleged offensive touching by Officer Turnure, the one-year statute of limitations found in § 2305.111(B) applies. Thus, Hicks's Fifth Claim is time-barred.

For similar reasons, the one-year statute of limitations also bars Hicks's Eleventh Claim raising intentional infliction of emotional distress. Ohio law generally provides a four-year statute of limitations for claims alleging intentional infliction of emotional distress. *See Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 453 N.E.2d 666, 672 (Ohio 1983). "However, when the acts underlying the claim would support another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress." *Crist v. Pugin*, No. 3:08-cv-501, 2008 WL 2571229, at *3 (N.D. Ohio June 25, 2008) (quoting *Stafford v. Clever Investigations Corp.*, No. 06AP-1204, 2007 WL 2800333, at *2 (Ohio Ct. App. Sept. 27, 2007)). Here, like his negligence claim, Hicks's claim for intentional infliction of emotional distress is brought exclusively against Officer Turnure, is based on the same events occurring on February 7, 2021, and rests upon the same foundation as Hicks's assault and battery claim. (*See* Doc. No. 4 ¶¶ 116–23.) Accordingly, it is subject to the one-year limitations period for

assault and battery claims and is time-barred.[15] *See, e.g., Freeman v. City of Lyndhurst*, No. 1:09-cv-2006, 2010 WL 908171, at *3 (N.D. Ohio Mar. 12, 2010) (intentional infliction of emotional distress claim arising out of officers' use of force against plaintiff in effectuating his arrest was time-barred under Ohio Rev. Code § 2305.111(B)).

## C. Malicious Prosecution and Conspiracy Claims Fail as a Matter of Law

In addition to the other bases for dismissal, the City and the Officer Defendants argue that Hicks's malicious prosecution claims (Seventh [state law] and Eighth [federal law] Claims) and his conspiracy claim (Tenth Claim) fail as a matter of law.

### 1. *Malicious Prosecution Claims (Seventh and Eighth Claims)*

"Under Ohio law, the elements of malicious prosecution are: '(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) *termination of the prosecution in favor of the accused.'" Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 675–76 (6th Cir. 2005) (quoting *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990)). Similarly, a § 1983 action premised on malicious prosecution requires the underlying criminal proceeding to have been resolved in favor of the plaintiff. *Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010) (citing *Heck*, 512 U.S. at 484).

---

[15] For the same reasons, to the extent Hicks's conspiracy claim (Tenth Claim) is brought under state law, it is time-barred. Under Ohio law, "[a] claim for conspiracy cannot be made [the] subject of a civil action unless something is done which, in the absence of the conspiracy allegations, would give rise to an independent cause of action." *Jordan v. Howard*, No. 29190, 2021 WL 5275974, at *5 (Ohio Ct. App. Nov. 12, 2021) (quotation marks and citations omitted) (alteration in original). "In other words, [a]n underlying unlawful act is required before a civil conspiracy claim can succeed." *Id.* (quotation marks and citations omitted) (alteration in original). "As a result, the applicable statute of limitations for filing a civil conspiracy is the relevant limitations statute for the underlying cause of action." *Id.* (quotation marks and citation omitted). As previously observed, Hicks's alleges that defendants conspired to provide an inaccurate report of the events surrounding Hicks's arrest in order to "coverup Turnure's action[s.]" (Doc. No. 4 ¶ 112.) Again, the underlying cause of action was the assault and battery alleged in the Fourth Claim. The one-year statute of limitations, therefore, governs, and this claim is time-barred. *See id.* at *6 (applying one-year statute of limitations for conspiracy claim based on assault and battery).

As set forth above, there is no dispute that Hicks pled "no contest" and was, thereafter, convicted of the crime of resisting arrest. Moreover, Hicks does not maintain, and there is nothing in the record to suggest, that his conviction has been overturned. Rather, in his opposition brief, he argues that he only agreed to plead "no contest" because he was allowed to do so without signing an agreement relieving the City of liability for damages from his arrest. (Doc. No. 37, at 11 (citing the record from the change of plea hearing).) Regardless of Hicks's reason for entering such a plea, the result was still a conviction that has not been overturned. "Because all elements must be present in a malicious prosecution claim, and without proof of a reversal of his earlier conviction, [Hicks] cannot prove all of the elements [and] this claim fails as a matter of law." *Bukowski v. Hall*, 165 F. Supp. 2d 674, 677 (N.D. Ohio 2001).

### 2. *Conspiracy Claim (Tenth Claim)*

Because Hicks's conspiracy claim is premised on an agreement between the City and its employees (namely, Chief Caprez and the Officer Defendants), the City and the Officer Defendants insist that it is barred by the intracorporate conspiracy doctrine. (*See* Doc. No. 27, at 15.) Under that doctrine, where "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509–10 (6th Cir. 1991)). The Sixth Circuit, nevertheless, has recognized a limited exception to the intracorporate conspiracy doctrine for actions taken outside the scope of employment. *See Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994). This exception "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work in the same place." *Id.*

Hicks's opposition to the application of the intracorporate conspiracy doctrine is unclear, although he appears to insinuate that the Officer Defendants were acting outside the scope of their duties because their actions involving the filing of false and/or incomplete police reports were motivated by a desire to hide Officer Turnure's actions from their superiors. (Doc. No. 37, at 11.) However, "[e]ven improper actions fall within the scope of employment where they are connected with the employer's business." *Saad v. City of Dearnborn Heights*, No. 11-cv-10103, 2012 WL 72244, at *3 (E.D. Mich. Jan. 10, 2012) (citing *Johnson*, 40 F.3d at 841); *see also Barrow v. City of Hillview, Ky.*, 775 F. App'x 801, 807–08 (6th Cir. 2019) (rejecting the notion that actions done by employees with an "independent personal stake" fall outside the intracorporate conspiracy doctrine, and holding that even if the plaintiff's allegations of bias were true, complaints by defendants were within the scope of employment because they "were made during the course of their working hours, the remarks were connected to the business of the hospital, and they were forwarded to the proper managerial authorities" (citing *Johnson*, 40 F.3d at 840–41)).

Here, all of the alleged acts—including the filing of fraudulent or incomplete police reports—were all acts related to and within the scope of the Officer Defendants' employment with the City. They were not private acts by persons who happen to work in the same place. *See, e.g., Buckley v. City of Westland*, No. 2:20-cv-11315, 2021 WL 2662255, at *4 (E.D. Mich. June 29, 2021) (plaintiff's allegations that defendant city police officers conspired to conceal information regarding an inmate's arrest to blame plaintiff were barred by the intracorporate conspiracy doctrine where "the acts in question, including the disclosing information regarding an arrest, dealing with an investigation agreement, [and] testifying in an internal investigation . . . are all acts related to [the officers'] employment as police officers"). Accordingly, the federal conspiracy

claim fails to state a claim as a matter of law and is subject to dismissal for this additional reason.[16]

For all of these reasons, the City and the Officer Defendants' motion for judgment on the pleadings is granted.[17]

## IV.  MOTION OF CHIEF CAPREZ

In his motion for judgment on the pleadings, Chief Caprez seeks judgment in his favor on the two claims asserted against him: failure to train/supervise (Ninth Claim) and conspiracy (Tenth Claim). (Doc. No. 29, at 1.) He argues that the conspiracy claim is barred by the intracorporate conspiracy doctrine. He further maintains that the failure to train/supervise claim is insufficiently pled because Hicks has failed to identify any prior incidents that would give rise to such a claim and because Chief Caprez is not a municipality. (*Id.* 3–5.)

### A.  **Failure to Train/Supervise (Ninth Claim)**

The Ninth Claim alleges, generally, that Chief Caprez "failed to adequately train and supervise his police officers concerning proper police procedures and constitutional limitations relative to the use of force . . . [and] failed to institute and/or enforce adequate policies and procedures for reality-based training governing the use of force[.]" (Doc. No. 4 ¶¶ 107–08.) In his Rule 12(c) motion, Chief Caprez argues that failure to train/supervise claims "allege *municipal* liability[,]" for which he cannot be held personally responsible. (Doc. No. 29, at 4 (emphasis in

---

[16] In *Bays v. Canty*, 330 F. App'x 594 (6th Cir. 2009), the Sixth Circuit acknowledged that the Ohio Supreme Court has yet to address whether the intracorporate conspiracy doctrine applies to civil conspiracy brought under Ohio law. But the court, nonetheless, held that the Ohio Supreme Court would embrace the doctrine. *Id.* at 594-95. Since then, this Court has applied the doctrine to conspiracy claims brought under Ohio law. *See Engle v. City of Cuyahoga Falls*, No. 5:14-cv-1161, 2015 WL 3852143, at *9 (N.D. Ohio June 22, 2015) (dismissing state conspiracy claim under the intracorporate conspiracy doctrine). For these reasons, to the extent the conspiracy claim is brought under Ohio law, it would also be barred by the intracorporate conspiracy doctrine.

[17] In granting this motion, the Court does not endorse the behavior of Officer Turnure or suggest that his actions in dealing with a resisting suspect should serve as a model for police behavior.

original) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006).)

It is unclear whether Hicks has attempted to bring this claim against Chief Caprez in his official or individual capacity. (*See* Doc. No. 4, at 1, 19.)[18] Chief Caprez is correct when he states that government officials may not be held personally liable under § 1983 solely on the basis of *respondeat superior*. *See Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (citation omitted); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995). "Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it must be based on active unconstitutional behavior." *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (quotation marks and citations omitted). To hold a supervisor individually liable based on a failure to train or supervise a subordinate, the supervisor must have "either encouraged the specific incident or misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Everson*, 556 F.3d at 495 (quotation marks and citation omitted); *see Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted).

Hicks does not allege that Chief Caprez actively encouraged or directly participated any alleged acts of misconduct or was even present when the events surrounding Hicks's arrest occurred. At best, the allegations against Chief Caprez suggest that he failed to properly train and/or supervise his police officers on the use of force employed in the context of an arrest. A general failure to train or supervise claim, however, is insufficient to hold a police chief

---

[18] The FAC provides that Chief Caprez is sued in his official and individual capacities. (*Id*. at 1.) Moreover, while Chief Caprez is the only defendant identified in the Ninth Claim, the subtitle indicates that it raises a claim for "Governmental liability" and further provides that "[d]efendants are jointly and severally liable for this conduct." (*See* Doc. No. 4, at 19 ¶ 109.)

individually liable for the alleged misconduct of his officers (even assuming that Hicks could demonstrate that the officers' conduct violated Hicks's constitutional rights). Hicks has, therefore, failed to state a failure to train/supervise claim against Chief Caprez in his individual capacity. *See, e.g., Brumlow v. Hamilton Cnty.*, No. 1:16-cv-394, 2019 WL 613217, at *4 (E.D. Tenn. Feb. 13, 2019) (finding sheriff was not individually liable for a failure to train his subordinates and noting that "[a]bsent personal involvement in the underlying unconstitutional act, the attempt to hold municipal supervisors liable in their individual capacities for their alleged failure to adequately train employees conflates a § 1983 claim of individual supervisory liability with one of municipal liability" (citing *Harvey v. Campbell Cnty.*, 453 F. App'x 447, 463 (6th Cir. 2011))).

Any suit against Chief Caprez in his "official capacity" would be tantamount to a claim against the City. *See S.L. ex rel. K.L. v. Pierce Twp. Bd. of Trustees*, 771 F.3d 956, 962 (6th Cir. 2014) (holding that an "official-capacity" suit against a government official is treated as a suit against the government entity itself) (citation omitted). But "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where the organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Overall v. Oakland Cnty.*, No. 20-cv-12869, 2023 WL 3509695, at *3 (E.D. Mich. May 17, 2023) (collecting cases); *see Hunt v. Applegate*, 91 F.3d 143 (Table), 1996 WL 428399, at *2 (6th Cir. July 30, 1996) ("Obviously, the first thing required [to establish a policy of inadequate training] is a constitutional event, i.e., an underlying constitutional violation that the failure to train causes."); *see also Templeton v. Brandt*, No. 1:20-cv-34, 2021 WL 1312617, at *6 (S.D. Ohio Apr. 7, 2021) (noting that "'[f]ailure to train' is not in and of itself a constitutional violation. Rather a failure-to-train theory is one way in which

a governmental entity can become liable for the actions of its agents" (citing *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

As was the case with Hicks's other *Monell* claims, any claim against the City for failure to train/supervise would fail, as a matter of law, because Hicks's complaint failed to establish the possibility of a constitutional violation. *See Robertson*, 753 F.3d at 622 (holding that "[t]here can be no liability under *Monell* without an underlying constitutional violation" (citation omitted)). To hold otherwise and permit Hicks to maintain this *Monell* claim against the City would be to invalidate the underlying state court judgment. Since Hicks is barred by his state court conviction from establishing a constitutional violation of the right to be free from excessive force, he cannot, as a matter of law, hold the City liable for any deficiency in its training on the subject.[19] Thus, Hicks's Ninth Claim fails.

## B. Conspiracy (Tenth Claim)

Likewise, and for all the reasons previously discussed, the lack of a viable constitutional violation dooms any conspiracy claim brought against Chief Caprez in his individual capacity. *See Jackim*, 2007 WL 893868, at *16 (citations omitted). Additionally, for reasons already stated herein, the intracorporate conspiracy doctrine applies to bar this claim as asserted against Chief Caprez. *See, e.g., Barrow*, 775 F. App'x at 808 (conspiracy claim against former police chief and police officers was barred by the intracorporate conspiracy doctrine).

Chief Caprez is also entitled to dismissal of the claims asserted against him.

---

[19] The absence of a constitutional violation would serve as an additional reason to enter judgment in favor of Chief Caprez on any failure to train/supervise claim brought against him in his individual capacity. *See Griffith v. Franklin Cnty.*, 975 F.3d 554, 579–80 (6th Cir. 2020) (noting that "a plaintiff cannot establish a claim for supervisory liability without establishing an underlying constitutional violation by a supervised employee" (citation omitted)).

## V.   CONCLUSION

For the reasons set forth above, the motions for judgment on the pleadings (Doc. Nos. 27 and 29) are granted. Because all claims asserted by Hicks are dismissed with prejudice, this case is closed.

**IT IS SO ORDERED**.


Dated: February 22, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**